**O**

# United States District Court
# Central District of California

| | |
|---|---|
| PRO WATER SOLUTIONS, INC., et al., | Case № 2:19-cv-08704-ODW (SSx) |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT [55]** |
| ANGIE'S LIST, INC., et al., | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Pro Water Solutions, Inc. brings this putative class action against Defendants Angie's List, Inc. ("Angie's List") and Angi Homeservices Inc. ("Angi") (together, "Defendants") on behalf of itself and others who used Angie's List's website to promote their businesses.   (*See* Second Am. Compl. ("SAC"), ECF No. 52.) Defendants removed this case from the Los Angeles Superior Court to the Central District on the basis of Class Action Fairness Act jurisdiction.   (Notice of Removal ¶¶ 8–37, ECF No. 1.)   Presently before the Court is Defendants' Motion to Dismiss the SAC, (Mot. Dismiss SAC ("Motion" or "Mot."), ECF No. 55), which, for the following reasons, is **GRANTED IN PART** and **DENIED IN PART**.[1]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND

Pro Water is in the business of providing water treatment services, and this case arises from its efforts to market its services through the use of advertising and lead generation services provided by Angie's List and non-party HomeAdvisor, Inc., respectively.  (*See generally* SAC.)

Angie's List operates a website homeowners and others use to locate, evaluate, contact, hire, and rate businesses for various contracting jobs.  (SAC ¶ 4.)  Pro Water was a registered business, or service provider, with Angie's List from 2011 to 2019.  (*Id.* ¶ 16.)  Angie's List requires Pro Water and other service providers who list with it to sign a Service Provider User Agreement ("SPUA") and the Angie's List Privacy Policy as a condition of being listed.  (*See id.* ¶¶ 17, 22, Ex. B ("Current SPUA"), ECF No. 52-2.)  Pro Water also pays Angie's List a fee to advertise its services on the Angie's List website by way of customer discounts, or "Coupons," and similar offerings.  (*Id.* ¶¶ 5, 23–28, 103.)  Pro Water signs an annual Advertising Agreement which sets the terms and rates for its advertising on Angie's List for the year.  (*Id.* ¶ 27.)

Like Angie's List, HomeAdvisor connects service providers with customers, albeit by way of a somewhat different business model.  Whereas service providers engaging Angie's List pay a fee to have their ads displayed on the Angie's List website in hopes of convincing *customers* to reach out to the service providers, HomeAdvisor's business model works in reverse.  HomeAdvisor asks its customers to fill out an online questionnaire, and it uses the results of that questionnaire to match the potential customer with service providers.  (*See* SAC ¶ 56.)  HomeAdvisor then sends the contact information of potential customers directly to service providers.  (*See id.*  ¶ 60.)   The service provider pays HomeAdvisor a fee for each lead HomeAdvisor sends the service provider.  (*Id.*)  Once the service provider receives the lead, it falls to the *service provider* to reach out to the customer and initiate the business relationship.  (*See id.* ¶¶ 75–77.)

Until recently, Angie's List and HomeAdvisor were two separate companies. After a series of corporate transactions in 2017, both Angie's List and HomeAdvisor became subsidiaries of a newly created corporate entity, Defendant Angi.  (SAC ¶ 32.)  As a result, "Angie's List and HomeAdvisor, companies that were former competitors, are now under the common ownership of [Angi]."  (*Id.* ¶ 57.)

In addition to both being owned by the same parent company, Angie's List and HomeAdvisor have combined their operations in a particular way Pro Water alleges results in it and other service providers being charged twice to reach the same customer.  Currently, when a potential customer seeks services through Angie's List, Angie's List presents the customer with a questionnaire to determine that customer's service needs.  Angie's List does two things with the questionnaire results: one, it uses them to present the customer with suitable service provider options from its own database, and two—crucially—it sends the results of the questionnaire to HomeAdvisor.  HomeAdvisor then uses the results of that questionnaire to transmit the customer's information to its subscribed service providers.  (SAC ¶¶ 54–60.)  Some of these providers are also Angie's List advertisers, like Pro Water, and some are not.  (*Id.* ¶ 64.)  Once the service providers receive customer contact information from HomeAdvisor, the service providers are free to reach out to the potential customers to offer their services.[2]

Pro Water alleges that as result of this scheme, it pays Angie's List once to advertise to potential customers, and then it pays HomeAdvisor a lead fee for the contact information of those very same customers.  Pro Water alleges harm in two senses: first, that Angie's List and HomeAdvisor "double charge[d]" it, (SAC ¶ 221), and second, that their practice rendered its ads on Angie's List "virtually worthless," (SAC ¶ 116).

---

[2] Once the customer transmits their questionnaire answers to Angie's List, the process of Angie's List forwarding the information to HomeAdvisor and HomeAdvisor forwarding the customer leads to service providers happens almost instantly.  (Decl. of Paul T. Cullen in Support of Opp'n Ex. A, ECF No. 39-1; *see* Notice of Lodging, ECF No. 40.)

Separately, Pro Water alleges that when it decided to end its subscription with Angie's List, Angie's List removed Pro Water's information from its website before Pro Water's subscription had expired and charged Pro Water for an additional month without listing Pro Water on its website. (SAC ¶¶ 122–123.) Pro Water disputed the charge, which led to Angie's List threatening to send the debt to third-party collectors unless Pro Water paid the bill. (*Id.* ¶ 124.)

Finally, Pro Water alleges that, although the parties' Advertising Agreement contains a term limiting Pro Water's time for bringing actions against Angie's List to 120 days, this term is unconscionable and unenforceable. (*Id.* ¶¶ 231–232.)

Based on the above, Pro Water asserts five causes of action, on behalf of itself and a putative class and subclasses, against Angie's List and Angi for: (1) breach of contract; (2) breach of implied warranty; (3) fraudulent misrepresentation; (4) violation of California's Unfair Competition Law, California Business and Professions Code sections 17200–17210 ("UCL"); and (5) declaratory relief. (*See generally* SAC.) Now, Angie's List and Angi move to dismiss the SAC under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. (*See* Mot.)

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, "a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2). Rule 8(a)(2) requires only that the complaint include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Under this standard, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Determining whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and the "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) ("It is properly denied . . . if amendment would be futile.").

## IV.    DISCUSSION

Defendants move to dismiss Pro Water's SAC for failure to plead facts sufficient to support any claim. (*See* Mot.)

In its Order Granting Defendants' Motion to Dismiss the First Amended

Complaint, the Court noted the parties' contractual choice of law (Indiana) and addressed the choice-of-law issue arising therefrom.   The Court first determined, under the approach for contractual choice of law analysis as set forth in *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992), and applying Indiana law to the question of the scope of the choice of law clause, that Pro Water's claims fall within the scope of the operative choice-of-law clause.   (Order on Mot. Dismiss FAC 9, ECF No. 45.)   Then Court then determined that Indiana had a substantial relationship to the parties or that there was another reasonable basis for the parties' choice of law.   (*Id.* at 10.)   The findings on these two points are uncontested by the parties and are therefore incorporated by reference herein; they apply to all causes of action Pro Water currently asserts.

The next step in the choice-of-law analysis is to determine whether the opponent of the choice of law has "establish[ed] both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue." *Wash. Mut. Bank, FA v. Superior Court,* 24 Cal. 4th 906, 917 (2001).   If the answer to both these questions is "yes," then the Court should decline to apply the chosen law and should apply California law instead. *See Nedlloyd*, 3 Cal. 4th at 466.   The Court considers each claim in turn, first addressing the choice of law analysis and then proceeding to the merits.

**A.    First Claim: Breach of Contract**

Defendants move to dismiss Pro Water's first claim for breach of contract. Regarding choice of law, the parties do not argue that there are any substantial differences between California contract law and Indiana contract law that would materially affect the outcome of the claim.   As there is no conflict between the laws, there is no conflict with a fundamental policy of California, and accordingly, the Court applies Indiana law to the breach of contract claim.

Under Indiana law, "the essential elements of any breach of contract claim are the existence of a contract, the defendant's breach thereof, and damages." *Holloway v.*

*Bob Evans Farms, Inc.*, 695 N.E.2d 991, 995 (Ind. Ct. App. 1998).  In its prior Order, the Court found Pro Water failed to allege a breach of either term of the SPUA referenced in the FAC.  The Court prohibited Pro Water from attempting to re-assert its breach of contract claim based on either of the previously alleged SPUA provisions.  (Order on Mot. Dismiss FAC 18.)  The Court also observed that, as to the claim for a refund of Pro Water's final-month listing fee, Pro Water had failed to sufficiently allege the relevant terms of the breached advertising agreement.  (*Id.* at 15–16.)

Defendants' first contract breach is based on Angie's List relationship with HomeAdvisor and the fees and loss of value Pro Water incurred as a result.  (SAC ¶¶ 161–164.)  Defendants' second contract breach has nothing to do with HomeAdvisor and is based solely on Angie's List failure to list Pro Water as a service provider on its website in its final month, despite Pro Water having paid it to do so.  (*Id.* ¶¶ 165–166.)  Pro Water acknowledges these two breaches constitute two separate and distinct subclaims.  (*Id.* ¶ 167.)  Accordingly, for the purpose of this Order, the Court bifurcates analysis of the breach of contract claim.

### 1.    First Contract and Breach: Pro Water's Ads and Angie's List's Relationship with HomeAdvisor

The first alleged breach arises from Angie's List sharing the results of its questionnaire with HomeAdvisor, to Pro Water's detriment.  (SAC ¶¶ 161–164.)  The Court concludes that these allegations fail to constitute a breach of contract.  Moreover, Pro Water's attempt to save its allegations by way of an integration clause is unavailing.  Finally, beneath these concerns lies a fundamental causation problem which renders the claim incurable.

#### a.   No breach of alleged terms

First, this subclaim fails because concluding that Defendants breached their contracts requires an interpretation of the contracts that is unreasonable.  The "primary purpose" in construing a contract "is to ascertain and give effect to the parties' mutual

intent." *Perfect v. McAndrew*, 798 N.E.2d 470, 479 (Ind. Ct. App. 2003). To effectuate this purpose, where terms of a contract are clear and unambiguous, courts "apply the plain and ordinary meaning of the terms and enforce the contract according to its terms." *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014).

A contract is ambiguous if "a reasonable person would find the contract subject to more than one interpretation." *Citimortgage, Inc. v. Barabas*, 975 N.E. 2d 805, 813 (Ind. 2012). "[T]he terms of a contract are not ambiguous," however, "simply because a controversy exists between the parties concerning the proper interpretation of terms." *Dick Corp. v. Geiger*, 783 N.E.2d 368, 374 (Ind. Ct. App. 2003). In determining whether a contract is ambiguous, and generally, courts should refuse to "interpret a contract in a fashion that achieves an absurd result." *A House Mechs., Inc. v. Massey*, 124 N.E.3d 1257, 1264–65.

In dismissing the breach of contract claim from the FAC, the Court previously considered whether Defendants breached two particular SPUA terms: (1) the term requiring Angie's List to refrain from sharing the personal information of its service providers with third parties, and (2) the term purportedly requiring Angie's List to remain a "passive conduit" that does not review the content of what its users or service providers post on the Angie's List website. (Order on Mot. Dismiss FAC 13.) The Court ultimately rejected each of these terms as a basis for the contract claim. (*Id.* 18.) In granting leave to amend, the Court made clear that Pro Water "may *not* reassert a breach of contract claim . . . premised on the same two SPUA provisions, as such an amendment would be futile." (*Id.*) Therefore, to the extent Pro Water's breach of contract claim arises from either of these terms, the Motion is granted. The question thus is whether Pro Water has sufficiently alleged any other contract terms Angie's List breached. For the following reasons, the answer to this question is "no."

The SAC presents three contract terms Pro Water newly alleges Angie's List breached, all of which are found in the parties' 2018 Advertising Agreement. (SAC

¶¶ 99–101.)  Pro Water's argument, however, rests on an interpretation of each of these terms that is neither plausible nor reasonable.

First, Pro Water newly alleges that Angie's List breached the provision of the SPUA providing that "Angie's List shall function only as the platform upon which Service Providers may offer Coupons to members."  (SAC ¶ 100.)  Pro Water advocates for a tortured interpretation of this phrase under which the phrase limits what Angie's List can and cannot do.  (Opp'n 7–8, ECF No. 56.)  But such an interpretation leads to absurdities.  Pro Water essentially asks the Court to read the quoted term as, "The only thing Angie's List is allowed to do in this business relationship is be a platform upon which Service Providers may offer Coupons to members," and that *any* activity outside of offering Coupons, such as sharing information with HomeAdvisor, constitutes a breach of contract.  But to state this proposition is to see its absurdity.  For example, under Pro Water's interpretation, Angie's List would be in breach of contract if it listed Pro Water in a customer's search results because listing a service provider in a customer's search results is not the same as offering Coupons to members.  Moreover, under any reasonable reading in context, this term does not limit Angie's List's rights.  If anything, the term does precisely the opposite: it limits the rights *of the consumer*, by preventing the consumer from demanding that Angie's List play a role beyond that of a Coupon provider.

Second, Pro Water alleges the Advertising Agreements provide that "Angie's List does not participate in any transaction between the Consumer and the Service Provider."  (SAC ¶ 100.)  Pro Water argues that this term places an affirmative contractual obligation on Angie's List, which Angie's List breached.  (Opp'n 8.)  This argument is unavailing for the same reason.  Interpreting this phrase as restricting Angie's List from doing anything is unreasonable.  Instead, this is an unambiguous disclaimer that operates to restrict *the customer* from suing Angie's List for failure to participate in a transaction between the consumer and the service provider.

Third and finally, Pro Water argues for a similar interpretation of the contract term quoted in paragraph ninety-nine of the SAC, but this argument fails for the same reason.  The key language here is that the services the service provider authorizes Angie's List to offer and publish "shall be presented to members in the form of coupons."  Pro Water asks for a reading of this term under which Angie's List is prohibited from doing anything else other than presenting services to members in the form of coupons.  As explained above, this reading of the contract is untenable and unreasonable.

### b.   Integration clause not applicable

In connection with the Motion to Dismiss the FAC, Defendants raised, and the Court accepted, the argument that the parties' Privacy Policy allowed Defendants to disclose information in the way they did.  The Court concluded that, because the Privacy Policy specifically allowed the conduct Pro Water alleged was a breach, Pro Water had not stated a breach of contract claim.  (Order on Mot. Dismiss FAC 14–15.)  In an effort to ameliorate these deficiencies, Pro Water now alleges that the parties' 2018 Advertising Agreement contained an integration clause, which Pro Water argues has the effect of invalidating the Privacy Policy and other previously signed contracts that permit Defendants to share Pro Water's information with affiliates.

"Where parties have reduced an agreement to writing and have stated in an integration clause that the written document embodies the complete agreement between the parties, the parol evidence rule prohibits courts from considering extrinsic evidence for the purpose of varying or adding to" the contract's written terms.  *Am.'s Directories Inc., Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1066 (Ind. Ct. App. 2005).

Pro Water's integration clause argument lacks merit.  The integration clause in the 2018 Advertising Agreement provides in key part that the Agreement "constitutes the entire agreement between the parties . . . *regarding the subject matter contained herein*."  (2018 Advert. Agreement ¶ 20, ECF No. 52-4 (emphasis added).)  In other

words, the 2018 Advertising Agreement constitutes the entire agreement *only* with respect to the specific 2018 ad services Pro Water purchased as part of the 2018 Agreement.  But the ad services Pro Water purchased from Angie's List in 2018 do not constitute or describe the parties' relationship in its entirety.  Pro Water and Angie's List had an ongoing relationship that existed both before and after the 2018 Advertising Agreement, and one of the documents governing that agreement was the Privacy Policy.  The Privacy Policy provided that Angie's List was allowed to share Pro Water's information in certain ways, and the Privacy Policy was not extinguished merely because the parties later made an additional agreement about a particular subject and time period.

In short, the newly alleged integration clause does not change the Court's conclusion with regard to the first contract subclaim.

### c.   No fundamental breach or causation

Under Indiana law, "causation is an essential element of liability in a breach of contract claim."  *Shepard v. State Auto. Mut. Ins. Co.*, 463 F.3d 742, 744 (Ind. Ct. App. 2006).  "[A] plaintiff must prove that the alleged breach of contract was a cause in fact of his loss, which requires a showing that the breach was a "substantial factor" in bringing about the plaintiff's damages."  *Id.*

In alleging and defending its contract claim, Pro Water pervasively conflates two things: Angie's List sharing with HomeAdvisor (1) the contact information *of potential* customers, and (2) the contact information *of Pro Water.*  (*See, e.g.*, Opp'n 2 (ambiguously asserting that Angie's List shared with HomeAdvisor "the Service Providers' Private Information and the Personal Information of prequalified prospective customers"); SAC ¶ 73 (asserting somewhat nonsensically that when Angie's List sent HomeAdvisor customer questionnaire results, it also sent HomeAdvisor "corresponding Angie's List Service Providers' Information").

This distinction is important because, in defending both the FAC and the SAC, Pro Water has maintained a dual-pronged, albeit somewhat entangled, argument that

the two principal acts of breach on the part of Angie's List were its (1) transmitting *Pro Water's information* to HomeAdvisor, and (2) transmitting *potential customers' information* to HomeAdvisor.  (*See, e.g.*, Opp'n 2 (accusing Angie's List of failing to disclose that it would send HomeAdvisor Pro Water's information); 9 (asserting that the Privacy Policy did not allow Angie's List to send HomeAdvisor potential customers' information).)  But a review of the Advertising Agreements reveals that the agreements do not expressly prohibit Angie's List from sharing potential customer information.  Pro Water asks the Court to read the *lack* of an express provision about what Angie's List can do with customer information as an affirmation that Angie's List *cannot* share customer information, but this reading is untenable and unreasonable.  Given that the Advertising Agreements are between Angie's List and Pro Water (not between Angie's List and customers), any term in an Advertising Agreement limiting what Angie's List could do with customer information would need to be clearly and expressly set forth.  Here, Pro Water has not alleged or otherwise pointed to any such express term.  Thus, out of Pro Water's entangled, dual-pronged argument, the Court must carefully reject any contract claim based on Angie's List transmitting potential customers' information to HomeAdvisor, because such activity is not a breach of its contracts with Pro Water.

With this premise soundly established, the final step is to observe that there is no *causation* between the alleged breach (transmitting Pro Water's information to HomeAdvisor) and Pro Water's alleged damages.  At bottom, Pro Water alleges its damages are the loss in value of the advertisements it purchased from Angie's List.  (See SAC ¶ 116 (alleging advertisements on Angie's List "had become virtually worthless").  Quite simply, however, whether Angie's List sent Pro Water's contact information to HomeAdvisor has nothing to do with Pro Water's damages, given that Pro Water had a pre-existing, consensual business relationship, or "membership," with HomeAdvisor.  (SAC ¶ 59.)  When HomeAdvisor sent Pro Water leads, HomeAdvisor sent those leads to the phone number or email address of Pro Water that Pro Water

provided HomeAdvisor.  It is not reasonable to infer otherwise: that when HomeAdvisor sent Pro Water leads as part of these two entities' business relationship, HomeAdvisor contacted Pro Water using a phone number or email address HomeAdvisor got *from Angie's List*.  Instead, the fount of Pro Water's claims is the fact that Angie's List sends HomeAdvisor the customer questionnaire results.  (SAC ¶ 56.)  But none of the alleged contract terms prevent Angie's List from sending HomeAdvsior customer questionnaire results.  The Court will not draw negative inferences from the contract terms to fashion a substantive right the parties never mutually intended.  *See Perfect*, 798 N.E.2d at 479.

For these reasons, the breach of contract claim based on sharing information with HomeAdvisor is ill-pleaded and will be dismissed.  Moreover, the Court finds that any amendment of this aspect of the breach of contract claim would be futile.  The Court's Order on the Motion to Dismiss the FAC made clear the deficiencies in Pro Water's allegations.  Pro Water attempted to overcome these deficiencies by alleging new terms and theories in the SAC.  But as the foregoing discussion reveals, Pro Water's multifaceted attempt fails, and for largely the same reasons as before.  The distinction between sharing Pro Water's information and sharing customer information adds another layer of implausibility to the claim, which, at this point, appears insurmountable.  Accordingly, this aspect of the breach of contract claim will be dismissed without leave to amend.  *Carrico*, 656 F.3d at 1008.

### 2.     Second Contract and Breach: Final Month Listing Charge

Separately, Pro Water maintains its allegation that Angie's List removed Pro Water's advertisement from its website before Pro Water's subscription had expired, and it charged Pro Water for an additional month without listing Pro Water on its website.  This aspect of the contract claim is sufficiently pleaded.  Pro Water alleges that it paid Angie's List a monthly fee to be listed on its website, and that Pro Water did not get the benefit of what it paid for because Angie's List did not list Pro Water on its website.  (*See* SAC ¶¶ 121–124, 165–166.)  This constitutes a plausible contract

claim, and the Motion to Dismiss is denied to this extent. *See MH Equity Managing Member, LLC v. Sands*, 938 N.E.2d 750, 758 (Ind. Ct. App. 2010) (affirming trial court's denial of motion to dismiss contract claim).

Defendants argue that any contract claim, including this one, is foreclosed by the term in the Advertising Agreements limiting Pro Water's time for bringing suit to 120 days. (Mot. 12–13.) Pro Water argues that (1) the limitation is an unconscionable contract term, and (2) even if it is not, Pro Water filed its claims within the 120-day period.

Under Indiana law, a contract may be found unconscionable in any of the following circumstances: (1) "when there is a great disparity in bargaining power that leads the weaker party to sign an agreement unwillingly or unaware of its terms," (2) "when an agreement is one that no person not under delusion, duress or in distress would make," or (3) when an agreement is one that "no honest and fair person would accept." *Flynn v. AerChem, Inc.*, 102 F.Supp.2d 1055, 1062 (S.D. Ind. 2000) (internal quotation marks and alteration brackets omitted).

Here, Pro Water has a plausible claim that the 120-day limitation period is unconscionable. The contract term at issue limits Pro Water's time for bringing a lawsuit without placing any limitations on Angie's List. This asymmetry, along with the imbalance in bargaining power between Angie's List and Pro Water, presents sufficient hallmarks of unconscionability to withstand a pleading attack.

Thus, at this pleading stage, Pro Water's contract claim is not necessarily time-barred. The Court reaches this conclusion without addressing whether Pro Water indeed did file suit within the 120-day period.

In summary, as to the breach of contract claim, the Court **GRANTS** Defendants' Motion to Dismiss **WITHOUT LEAVE TO AMEND** to the extent the claim is based on any sharing of information or coordination with HomeAdvisor. The Court **DENIES** the Motion to the extent the breach of contract claim is based on the final month listing charge.

**B.      Second Claim: Breach of Implied Warranty**

Defendants move to dismiss Pro Water's second claim for breach of implied warranty.  (SAC ¶¶ 169–183.)  The parties do not argue that there is any material difference between California's and Indiana's respective laws for implied warranty claims.  Because there is no apparent conflict between the laws, there is no apparent conflict with a fundamental policy of California, and accordingly, the Court applies Indiana law to the breach of implied warranty claim.

Pro Water's SAC cites to Indiana Pattern Jury Instructions 2517 and 2519. These instructions are for causes of action based on the Indiana Uniform Commercial Code ("IUCC"), suggesting that the second claim arises from the IUCC.  (SAC ¶¶ 173, 179.)  Reflecting this suggestion, Defendants argue that in Indiana, implied warranty claims arise from and are governed by the IUCC, and that, under the IUCC, the implied warranty only applies to transactions in goods.  (Mot. 15.)  Pro Water does not dispute this legal principle and instead argues that the advertising services Angie's List provides qualify as a "good" under the IUCC.  (Opp'n 18.)

In Indiana, a "good" under the IUCC is "(1) a thing; (2) existing; and (3) movable, with (2) and (3) existing simultaneously."  *Helvey v. Wabash Cnty. REMC*, 278 N.E.2d 608, 610 (Ind. Ct. App. 1972).  Thus, for example, a contract for the programming and hosting of a website is a contract for services to which the IUCC does not apply.  *See Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 812 (Ind. 2009) ("[O]ne can copy a website using tangible, movable objects such as hard drives, cables, and disks. These objects are in themselves just as certainly goods, but it does not necessarily follow that the information they contain classifies as goods as well.").

Pro Water argues that Angie's List's advertising services qualify as a "good," but the argument is unavailing.   Pro Water insists its ads are "movable" because they can be printed onto paper and the paper can be moved.   (Opp'n 18); *Helvey*, 278 N.E.2d at 610.  But an Angie's List ad itself exists digitally (if it exists at all), and

moving a paper copy of the ad does not move the ad itself.  Just as the ability to copy a website does not make it movable for purposes of the IUCC, the ability to print ad onto paper does not make the ad movable.

Pro Water argues it should be given leave to amend because the contract "arguably provides for both goods and services." (Opp'n 18.)  But other than the printable ad itself, Pro Water has not pointed to any other "good" Angie's List sold it as part of their business relationship.  As Pro Water cannot identify any goods, the Court finds that amendment of this claim would be futile.  *See Carrico*, 656 F.3d at 1008.  The Court **GRANTS** Defendants' Motion as to the second claim **without leave to amend**.

## C.    Third Claim: Fraudulent Misrepresentation Claim

Defendants move to dismiss Pro Water's third claim for fraudulent misrepresentation.  The Court previously dismissed this claim because (1) Pro Water had not alleged facts supporting the tort of fraud as independent from Defendants' alleged breaches of contract; and (2) Pro Water had failed to allege a false misrepresentation.  (Order on Mot. Dismiss FAC 17–18.)

Pro Water has agreed to withdraw its claim for fraudulent misrepresentation. (Opp'n 19.)  "The bottom line," counsel urges, "is that, in getting up to speed on Indiana law, it appears that Plaintiff's fraud claims are more appropriately pled as constructive fraud." (*Id.*)  Counsel asks for leave to file a Third Amended Complaint adding a claim for constructive fraud.  (*Id.* at 23.)

Counsel's suggestion that his unfamiliarity with the "nuances of Indiana law" prevented him from asserting the proper fraud claim any sooner are not well taken. (*Id.* at 23.)  Counsel has not pointed to any difference (nuanced or not) between Indiana and California law that made counsel unaware of the viability of a constructive fraud claim until now.  In Indiana, a claim for constructive fraud consists of:

(1) a duty owing by the party to be charged to the complaining party due to their relationship, (2) violation of that duty by the making of deceptive

material misrepresentations of past or existing facts or remaining silent when a duty to speak exists, (3) reliance thereon by the complaining party, (4) injury to the complaining party as a proximate result thereof, and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Nestor v. Kapetanovic*, 573 N.E.2d 457, 458 (Ind. Ct. App. 1991).   Moreover, "[u]nlike actual fraud, constructive fraud may be based on promissory misrepresentations; however, it must be shown that the promisee suffered a detriment and the promisor obtained some advantage." *Id.* at 459.

The elements of constructive fraud in Indiana are very similar, if not identical, to fraud-based causes of action in California.  First, the elements of constructive fraud in Indiana are virtually the same as that of fraud based on concealment or omission in California, as developed by a line of California cases tracing back mainly to *LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997).  *LiMandri* articulated the four scenarios in which there is a "duty owing by the party to be charged to the complaining party due to their relationship."  *Nestor*, 573 N.E.2d at 458.  Those scenarios are (1) when a fiduciary relationship exists between the plaintiff and defendant; (2) when the defendant has exclusive knowledge of material facts unknown to the plaintiff; (3) when the defendant actively concealed a material fact; and (4) when the defendant made partial representations while suppressing other material facts.  *LiMandri*, 52 Cal. App. 4th at 336.  Second, California recognizes its own version of constructive fraud. It "is a unique species of fraud applicable only to a fiduciary or confidential relationship."  *Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 415 (2000).  It "comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent." *Id.*

Pro Water's proposed Indiana constructive fraud claim contains nothing that Pro Water could not previously have asserted as a claim for either common-law fraudulent misrepresentation or constructive fraud under California law.  Thus, the

1  Court finds unavailing counsel's assertion that the nuances of Indiana law alerted him

2  to the viability of a constructive fraud claim.  Moreover, because Indiana constructive

3  fraud hews so closely to California fraud by omission or concealment under *LiMandri*,

4  the Court finds that any attempt to recast the fraud claim under the Indiana

5  constructive fraud standard would be no more than a re-statement and a re-hashing of

6  the fraud claim that this Court has already twice decided was deficient.  Thus, any

7  attempt to amend this claim would be futile, and the Court **GRANTS** Defendants'

8  Motion as to the third claim **without leave to amend.**  *See Carrico*, 656 F.3d at 1008.

9  **D.     Fourth Claim: UCL**

10  Defendants move to dismiss Pro Water's fourth claim for violations of the

11  California UCL.   Preliminarily, the Court notes that this claim is asserted by

12  California Plaintiffs only.  (SAC ¶ 41.)

13  The Court previously dismissed the UCL claim on choice-of-law grounds.  The

14  Court observed that Pro Water's UCL claim was predicated on the same facts as those

15  underlying its fraud claim.  The Court then employed an "underlying claim" analysis,

16  observing that applying Indiana law to Pro Water's fraud claim would not violate

17  California fundamental policy against fraud, and that, since the UCL claim was also

18  based on fraud, applying Indiana law to Pro Water's UCL claim would likewise not

19  violate California fundamental policy.  On that basis, the Court applied Indiana law,

20  which does not recognize the California UCL, and dismissed the claim.  (Order on

21  Mot. Dismiss FAC 12–13.)

22  In light of Pro Water's allegations as they are now developed, and in light of

23  Pro Water's additional choice-of-law allegations, the Court finds it appropriate to

24  revisit the choice of law question as to the UCL claim.  In particular, Pro Water's

25  UCL claim as set forth in the SAC is *not* solely predicated on its fraudulent

26  misrepresentation claims.  As discussed in this section, Pro Water's UCL claim is

27  based on behavior which Pro Water alleges is fundamentally unfair and

28  anticompetitive.   This claim therefore does not neatly analogize to any state

common-law claim, and accordingly, the "underlying claim" analysis is no longer appropriate in the current context.

The next step in the choice of law analysis is to determine whether enforcing Indiana law (i.e., whether refusing to recognize a California UCL claim) would run counter to a fundamental policy of California. The Court uses California law for this step. Rest. 2d Conflict of Laws § 187 cmt. g; *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 537 (C.D. Cal. 2013) (applying California law and the Restatement approach to a choice-of-law question); *Wash. Mut. Bank*, 24 Cal. 4th at 916 (2001) (same). To determine whether Pro Water's UCL claim invokes a fundamental California policy, the Court considers Pro Water's underlying UCL allegations.

### 1.    UCL Claim – 'Unfair' Prong

Remarking on the statutory predecessor to the UCL (California Civil Code section 3369), the California Supreme Court observed that the Legislature intended by its "sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur." *Barquis v. Merch. Collection Ass'n*, 7 Cal. 3d 94, 111 (1972). The broad language of the statute "enable[s] judicial tribunals to deal with the innumerable 'new schemes which the fertility of man's invention would contrive.'" *Id.* at 112 (quoting *Am. Philatelic Soc. v. Claibourne*, 3 Cal. 2d 689, 698 (1935)). Courts' decisions since the adoption of the current form of the UCL in 1972 have repeatedly affirmed that the UCL covers a wide variety of wrongful business conduct. *See, e.g.*, *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151–52 (9th Cir. 2008).

Given this generous standard, Pro Water has plausibly alleged that Angie's List engaged in unfair, anticompetitive conduct together with HomeAdvisor and that this conduct had the effect of materially devaluing the advertisements Pro Water purchased to place its services before the eyes of Angie's List customers. Angie's List takes advertising dollars from service providers who intend by way of those ads

to reach and attract Angie's List customers.  At the same time, it simultaneously puts those same customers through a process that serves to connect them to different service providers, thereby decreasing the chances that the Angie's List customers will respond to the advertising service provider's listing or ad.  By creating competition in its own listing and ad space, Angie's List has devalued Pro Water's ad spend in a way that Pro Water could not have foreseen at the time of contracting and which it is powerless to combat.  Pro Water has plausibly alleged that it was dishonest and unfair of Angie's List to conduct its business in this way without offering any sort of discount or concession to Pro Water.  *See Chern v. Bank of Am.*, 15 Cal. 3d 866, 876 (1972) (noting unfairness in bank's practice of advertising interest rates based on a 365-day year but calculating and paying customers interest based on a 360-day year).

Given this conclusion, enforcing Indiana law would deprive Pro Water of a viable claim under the California UCL.  Therefore, the Court must next determine whether allowing such unfair behavior to go unchecked by California courts would violate a fundamental policy of California.

### 2.    Fundamental Policy

"There is no bright-line definition of a 'fundamental policy.'"  *Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 889 F. Supp. 2d 1198, 1216 (E.D. Cal. 2012) (quoting Restatement (Second) of Conflict of Laws § 187 cmt. g).  On one hand, the Court must give regard to California's interests with respect to the UCL before proceeding to apply Indiana law.  Restatement (Second) of Conflict of Laws § 187 cmt. g.  On the other hand, "[t]he mere fact that the chosen law provides . . . lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would" is not sufficient reason to apply California law.  *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) (citing *Wong v. Tenneco*, 39 Cal. 3d 126, 135–36 (1985)).  The Restatement, which California courts follow, explains that "a fundamental policy may be embodied in a statute . . . which is designed to protect a person against the

oppressive use of superior bargaining power," and provides as an example a state statute "involving the rights of an individual insured as against an insurance company."  Restatement (Second) of Conflict of Laws § 187 cmt. g.

This Court finds that the California UCL embodies a fundamental policy of California which would be frustrated if the Court declined to enforce it.  "Consumers in California traditionally have benefited from protective legislation and far-reaching judicial determinations in their battle against unfair business practices."  Rod Divelbiss, *Prevention of Unfair Business Practices in California: A Proposal for Effective Regulation*, 32 Hastings L.J. 229, 229 (1981).  As early as 1935, the California Supreme Court declared "the right of the public to protection from fraud and deceit," *Claibourne*, 3 Cal. 2d at 698, a dictum California courts have repeated in unfair competition cases, Wesley J. Howard, *Former Civil Code Section 3369: A Study in Judicial Interpretation*, 30 Hastings L.J. 705, 708 n.15 (1979).  Moreover, California has historically shown itself to be a leader in consumer protection; the California Attorney General's Office opened its Consumer Fraud Unit in 1959, several years before the coming boom in federal consumer legislation.  *Id.* at 713.  After two seminal cases affirming the broad scope of the UCL's predecessor, California Civil Code section 3369—*People v. Nat'l Research Co.*, 201 Cal. App. 2d 765 (1962) and *Barquis* in 1972—the California Legislature continued to affirm its opposition to unfair business practices by amending the statute in 1972 to provide for civil penalties in addition to injunctions.  Howard, *supra*, at 721.  This led to a boom in district attorney consumer fraud divisions in California, and these divisions' litigation of unfair competition cases continued to broaden the statute's scope.  *Id.* at 721–22.  UCL litigation is now very common in California, with California courts regularly finding UCL claims well-pleaded in a variety of contexts.  *See Flamingo Indus. (USA) Ltd. v. U.S. Postal Serv.* 302 F.3d 985, 998 (9th Cir. 2002) (observing UCL is "notoriously broad"), *rev'd on other grounds sub nom. U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736 (2004)); William L. Stern, *Business & Professions*

*Code Section 17200 Practice* § 1:2 (2021) (noting California's UCL is "perhaps" the "toughest pro-consumer law in . . . the nation").

In short, the history of unfair competition law in California, including the UCL as currently codified, demonstrates California's broad fundamental policy of preventing unfair business practices in all their forms. *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971) (announcing that the "[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society"). And although Pro Water is a business, it is very much a consumer of Angie's List's services, and in all material ways the imbalance of bargaining power between Angie's List and Pro Water is just as pronounced, and just as subject to protective regulation, as the imbalance of bargaining power inherent in a typical business-to-consumer relationship.

California's fundamental commitment to fair competition and the eradication of unfair business practices within its boundaries would be frustrated were the Court to apply Indiana law and deny Pro Water its UCL claim. *See Kissel v. Code 42 Software, Inc.*, No. SACV 15-1936-JLS (KESx), 2016 WL 7647691, at *4 (C.D. Cal. Apr. 14, 2016) (finding enforcement of Minnesota law contrary to fundamental policy of California, where California's Automatic Renewal Law, a consumer protection statute, had no analogue in Minnesota).

### 3.   Materially Greater Interest

Having found that Pro Water satisfies its burden to demonstrate a fundamental conflict, the Court turns to whether California has a materially greater interest in adjudicating this action. This inquiry is "more nuanced than simple consideration of which state has a greater economic interest in or connection to the parties' dispute." *Brack v. Omni Loan Co., Ltd.*, 164 Cal. App. 4th 1312, 1329 (2008) (citing *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 903 (1998)). Rather, courts "must consider which state, in the circumstances presented, will suffer greater impairment of its policies if the other state's law is applied." *Id.* Here, the

parties have pointed to no policy of Indiana that would be frustrated if the Court were to apply California law to the UCL claim. Conversely, as the discussion herein makes clear, California's fundamental policy against unfair competition would be materially frustrated were the Court to apply Indiana law, because California service providers using Angie's List would lack the protection against unfair competition California's laws provide. *See Kissel*, 2016 WL 7647691, at *5 (observing that application of Minnesota law would "deprive California consumers of substantive consumer protections," and proceeding to apply law of California, not Minnesota).

Accordingly, the Court applies California law to the UCL claim. As discussed above, the UCL claim is sufficiently pleaded under the 'unfair' prong. Therefore, the Court **DENIES** Defendants' Motion as to the fourth claim.

**E.    Fifth Claim: Declaratory Relief**

By way of its fifth claim, Pro Water seeks a declaration that the provision in the Advertising Agreements requiring it to bring its claims against Angie's List within 120 days or else forfeit them is unconscionable and unenforceable. (SAC ¶ 232.) Defendants move to dismiss the fifth claim on the grounds that the 120-day limitation is valid and enforceable. (Mot. 9.)

The parties do not argue that there is any material difference between California's and Indiana's respective laws for declaratory relief claims or unconscionability. As there is no apparent conflict between the laws, there is no apparent conflict with a fundamental policy of California, and accordingly, the Court applies Indiana law to the declaratory relief claim.

In Indiana, a claim for declaratory relief or declaratory judgment "is remedial in nature, affording relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." *Volkswagenwerk, A. G. v. Watson*, 390 N.E.2d 1082, 1085 (Ind. Ct. App. 1979). "In determining the propriety of declaratory relief, the test to be applied is whether the issuance of a declaratory judgment will effectively solve the problem, whether it will

serve a useful purpose, and whether or not another remedy is more effective or efficient." *Id.*  Thus, Courts applying Indiana law can refuse to entertain declaratory judgment claims "where the relief sought would not terminate the controversy between the parties." *Id.*  Courts can also dismiss or stay a declaratory action "if a pending suit will satisfactorily resolve the controversy between the parties." *Id.*

Here, the declaratory relief Pro Water seeks would function only as a rebuttal to Defendants' anticipated defense that Pro Water's claims are contractually time-barred. In other words, Pro Water's claim for declaratory relief has meaning only in the context of Pro Water's primary contract claim, and moreover, the issue on which Pro Water seeks declaratory relief will be fully addressed as part of Pro Water's viable claims, *if* Defendants raise the issue at all.  And if Defendants do not raise the issue, there will be no need for a declaration on this issue.  Therefore, in the interest of judicial economy, the preferred course of action is to dismiss the declaratory relief claim and allow the issue of the limitations period to be litigated in the context of Pro Water's other viable claims if and when the issue arises.

This decision comports with Indiana authority.  A declaration of unconscionability would partially address the parties' controversy without actually terminating it.  This is impermissible.  *Watson*, 390 N.E.2d at 1085.  Conversely, Pro Water's pending claims will satisfactorily resolve the limitations period issue.  *Id.*

In light of these considerations, Defendants' Motion is **GRANTED** with respect to the fifth claim.  Because this issue will be litigated (or will not come up at all) in the context of Pro Water's remaining viable claims, any attempt to amend or re-state this claim would lead to the same result.  This means amendment would be futile, and the fifth claim is accordingly dismissed **without leave to amend**.  *See Carrico*, 656 F.3d at 1008.

**F.    Leave to Add Causes of Action**

As part of its opposition, Pro Water requests leave to add a claim for constructive fraud and a claim for money had and received.  (Opp'n 23–25.)  For

reasons already discussed, the Court **DENIES** leave to add a claim for constructive fraud.

For similar reasons, the Court **DENIES** leave to add a claim for money had and received. California also recognizes the common count of money had and received, and Pro Water has offered no explanation why it did not assert this claim earlier in the proceedings. Due to the obvious similarity between the California and Indiana versions of the claims, the Court views with some suspicion counsel's averment that weeks of poring over the nuances of Indiana law were required to determine that a claim for money had and received was viable. (Opp'n 23, 25.)

Moreover, adding a claim for money had and received would be futile because a facial review of the proposed claim reveals that it is without merit. If Indiana law applies, the claim fails because in Indiana, "the existence of an express contract precludes recovery under the theory of money had and received." *T-3 Martinsville, LLC v. US Holding, LLC*, 911 N.E.2d 100, 123 (Ind. Ct. App. 2009). Here, Pro Water has alleged an express contract governing how much money Pro Water was to send Angie's List and the types of services Angie's List was to provide Pro Water as consideration. Under Indiana law, the existence of this contract bars Pro Water's claim for money had and received based on Pro Water's contractual payments to Angie's List.

If California law applies, then the amount Angie's List allegedly received must be capable of reduction to a "certain sum." *Avidor v. Sutter's Place, Inc.,* 212 Cal. App. 4th 1439, 1454 (2013). As discussed herein, Pro Water has stated a claim for unfair behavior based on the devaluing of its ad spend. The harm Pro Water has incurred, if proven, will be some percentage of its ad spend. Courts applying California law regularly dismiss common counts for nebulous sums such as this. *See Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 1000 (N.D. Cal. 2020) (dismissing money had and received claim without leave to amend when plaintiff relied on "mere estimates" in seeking a pro-rated reimbursement of college tuition). What Pro Water

seeks here is not the sort of "certain sum" recognized by California courts as permitting a claim for money had and received.[3]

Thus, under either California or Indiana law, adding a claim for money had and received would be futile, and leave to amend is also denied on this basis.

## V.   CONCLUSION

In summary, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.  (ECF No. 55.)  To the extent it arises from Angie's List's sharing of customer or service provider information, the first claim is dismissed.  The second, third, and fifth causes of action are dismissed.  No leave to amend is granted.  The remaining viable causes of action are (1) the first claim for breach of contract to the extent it arises from Pro Water's final month payment, and (2) the fourth claim for violation of the California UCL.  Defendants have **twenty-one (21) days** from the date of this Order to answer.


**IT IS SO ORDERED.**


September 21, 2021


_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

---

[3] The Court does not consider the lead generation fees Angie's List paid HomeAdvisor in this analysis, because Angie's List is not suing HomeAdvisor.